# IN THE UNITED STATES COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VIRGINIA MILLER, | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | |
| NANCY A. BERRYHILL, Commissioner of Social Security | : | No. 16-cv-00521-RAL |
| Defendant | : | |

## MEMORANDUM

Virginia Miller alleges the Administrative Law Judge ("ALJ") erred in denying her application for Social Security Disability Insurance ("SSDI"). *See* Plaintiff's Brief and Statement of Issues in Support of Request for Review ("Pl. Br.") at 1. Miller argues that the ALJ erred 1) in "disregarding the opinions of Ms. Miller's treating physicians" and affording more weight to the opinions of non-treating physicians, 2) in his evaluation of Ms. Miller's credibility; and 3) in failing to address work limitations caused by Ms. Miller's headaches. Pl. Br. at 1-2.

After careful review of the medical evidence and other materials in the record, I find the ALJ did not err, and remand is not warranted.[1]

## PROCEDURAL HISTORY

Miller filed an application for SSDI on December 14, 2011. R. 74. Following an initial denial (R.85-89), Ms. Miller requested a hearing which took place October 10, 2013 before ALJ Javier A. Arrastia (R. 29-73).

---

[1] The parties have consented to jurisdiction of a magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. *See* Doc. No. 26.

1

On March 7, 2014, ALJ Arrastia issued a decision denying Miller's application for SSDI. R. 14-24. The ALJ found that Miller was not disabled because she was capable of performing light work as defined in 20 CFR 404.1567(b), performed primarily on her own, not as part of a team, in a quiet environment, except not work involving complex or detailed instructions or tasks. *Id.*

On November 27, 2015, the Appeals Council denied Miller's request for review. R. 1-5. This request for review followed pursuant to 42 U.S.C. § 405(g).

## **FACTUAL HISTORY**

Miller was 48-years-old at the time of the administrative hearing. R. 35. Miller lives alone in a house that she owns. R. 36-37. Miller's highest level of education is a Juris Doctor from Rutgers Law School, which she obtained in 1998. R. 42. Ms. Miller was previously employed as a litigator at the law firm of Anderson Kill P.C. from 2001 until approximately May of 2010 when she was terminated. R. 43-44. Miller served in the international air force reserve as a pilot. R. 45.

On August 25, 2009, Miller tripped on uneven pavement causing her to hit her head on the ground. Pl. Br. at 3. Miller sought treatment at the University of Pennsylvania Hospital Emergency Room the day after the accident with complaints headache and nausea. Miller reported that she tripped and fell, landing on her right hand and both knees, and impacting the left side of her face and forehead on the pavement. R. 213. Miller did not lose consciousness. *Id.* Claimant was diagnosed with a minor head injury, right hand/wrist sprain, and left upper back sprain. *Id.* Miller's injuries stemming from this accident give rise to her claim alleging a disability.

Miller testified that she is unable to work due to migraines that she experiences one or two times a week. R. 47. Headaches and migraines are triggered by lights, noise,

2

and cognitive overload. R. 48-49. Miller takes Imitrex to treat her migraines, which alleviates the pain but causes drowsiness. R. 49. The claimant also takes Zonegran to treat her migraines. R. 49. Miller testified that she experiences severe migraines "every couple of months." R. 55-56. When the headaches start to escalate, she takes Imitrex and will lay down for a couple of hours. R. 58.

Miller also reported issues with decreased cognitive functions, inattention to detail, and issues with decision making. R. 47. Miller reported "a little bit of insomnia." R. 53. Miller experiences difficulty being around a lot of people, explaining that she has difficulty with focus, communicating with a group, and filtering out noises. R. 62.

Miller has two dogs that she walks once or twice a day for fifteen to thirty minutes. R. 56. She checks her emails on a daily basis, but is unable to use the computer for a substantial part of the day because she has issues with looking at the screen. R. 58-59.

The claimant seeks treatment at the VA Hospital twice per week, where she seeks treatment with a neurologist, a speech therapist, and a physical therapist. R. 50; 52. Miller also seeks treatment with an occupational therapist once per week which includes an action plan to assist Miller in organizing her home. R. 51.

The vocational expert, Mr. Earhart, testified that Miller had past relevant work experience as an attorney, which was skilled sedentary work with a Specific Vocational Preparation[2] of 8. R. 64. Likewise, Ms. Miller's position as a flight officer in the military was skilled work with an SVP of 7 or 8. *Id.*

---

[2] Specific Vocational Preparation ("SVP") is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.

The ALJ posed the following hypothetical:

> [W]e have a younger individual with obviously considered really more of a high school education and skilled past relevant work. There really isn't that much of an exertional limitations [sic] as she's a younger individual. Let's look at the sedentary or light. Not involving complex or detailed instructions or tasks. Performed primarily on her own, not as part of a team. I'm not sure if this can be, or how to exactly quantify as in, I guess a relatively quiet environment?

R. 65. Mr. Earhart concluded that this individual would not be able to perform Miller's past relevant work as an attorney. *Id.* Mr. Earhart modified the hypothetical to reflect a "quiet" noise level, which is an office environment, and concluded that this individual would be capable of the full range of sedentary, unskilled work. *Id.* Jobs in the national economy include order clerk, which is sedentary unskilled work; shirt presser, which is light unskilled work with an SVP of 2; and marker, retailer, which is light unskilled work. R. 66.

Mr. Earhart testified that these positions would require Miller to tolerate brightly lit conditions. R. 69. If, as a result of the brightly lit environment, an employee would need to lie down for an hour or two at least once a week, this individual would not be capable of competitive employment. *Id.*

## **DISCUSSION**

A claimant is disabled if she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905; *see also Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009). In reviewing an ALJ's disability determination, I must accept all the ALJ's fact findings if supported by substantial evidence or "such relevant evidence as a reasonable mind might accept as adequate to

4

support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 390 (1971) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also* 42 U.S.C. § 405(g). I may not weigh the evidence or substitute my own conclusions for those of the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). However, the ALJ's legal conclusions and application of legal principles are subject to "plenary review." *See Payton v. Barnhart*, 416 F. Supp. 2d 385, 387 (E.D.Pa. 2006).

### A. The RFC assessment is supported by substantial evidence.

Miller argues that the ALJ erred in affording limited weight to her treating physicians, Drs. Wood, Wallack, and Segal, and instead giving more weight to the consultative examiners, Drs. King and Maitz. Pl. Br. at 21-25. For the reasons discussed below, I find that the ALJ's RFC assessment is supported by substantial evidence.

A treating source's opinion is entitled to controlling weight when supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record.[3] *See* 20 C.F.R. § 416.927(c)(2); SSR 96-2p, 1996 WL 374188 (July 2, 1996). A treating source's opinion may be rejected "on the basis of contradictory medical evidence." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999); *see Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991) (contradictory opinions by state agency physicians was a sufficient basis for refusing to give a treating physician's conclusory opinion controlling weight); *Brown v. Astrue*, 649 F.3d 193, 197 (3d Cir. 2011) (ALJ "clearly explained" why she gave greater weight to the opinion of a medical

---

[3] A treating source is a "physician, psychologist, or other acceptable medical source" who provides a patient with "medical treatment or evaluation," and has an "ongoing treatment relationship with the patient." 20 C.F.R. § 404.1502. A medical source may be considered a treating source where the claimant sees the source "with a frequency consistent with accepted medical practice for the type of treatment . . . required for [the claimant's] condition(s)." *Id.*

5

consultant than to treating physician). So too may an opinion be rejected if there is insufficient clinical data, *see Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985), or if the opinion is contradicted by the physician's own treating notes or the patient's activities of daily living. *See Smith v. Astrue*, 359 F. App'x 313, 316-17 (3d Cir. 2009) (not precedential). The opinion may be accorded "more or less weight depending upon the extent to which supporting explanations are provided." *Plummer*, 186 F.3d at 429 (*citing Newhouse*, 753 F.2d at 286).

Pursuant to 20 C.F.R. 416.927(c)(2), when deciding that a treating source's opinion is not entitled to controlling weight, the ALJ must evaluate the opinion by considering certain factors such as: the length of the treatment relationship, the frequency of visits, the nature and extent of the treatment relationship, whether the source has supported his or her opinion with medical evidence, whether the opinion is consistent with the medical record, and the medical source's specialization. 20 C.F.R. 416.927(c)(2); *see also* SSR 96-2p, 1996 SSR LEXIS 9, 1996 WL 374188, at *4.

Opinions from non-treating sources who have examined a claimant "generally" are accorded more weight than those from a non-examining source, though they do not receive as much weight as a treating source's opinion.[4] 20 C.F.R. § 416.927(c)(1), (d)(1); *see Chandler*, 667 F.3d at 361. Testimony from a non-examining source also must be considered by the ALJ, but is not entitled to deference.[5] 20 C.F.R. § 416.927(f); SSR 96-6p, 1996 WL 374180 at *2.

---

[4] Non-treating sources are usually doctors who have examined the claimant, but not in the context of an ongoing treatment relationship. 20 C.F.R. § 416.902. A source is non-treating if a claimant visits a doctor solely to obtain a report in support of his or her claim. *Id.*

[5] A non-examining source is an acceptable medical source who has not examined the claimant, but who provides a medical opinion of the case. 20 C.F.R. § 416.902.

While these general rules can be helpful, the Third Circuit has been clear that an ALJ is not bound to a rigid hierarchy of deference:

> Although treating and examining physician opinions often deserve more weight than the opinions of doctors who review records, *see, e.g.,* 20 C.F.R. § 404.1527(d)(1)-(2), "[t]he law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity," *Brown v. Astrue,* 649 F.3d 193, 197 n. 2 (3d Cir.2011). State agency opinions merit significant consideration as well. *See* SSR 96–6p ("Because State agency medical and psychological consultants . . . are experts in the Social Security disability programs, . . . 20 C.F.R. §§ 404.1527(f) and 416.927(f) require [ALJs] . . . to consider their findings of fact about the nature and severity of an individual's impairment(s) . . . .").

*Chandler*, 667 F.3d at 361. Thus, for instance, a non-examining physician's opinion may be given more weight than a consultative examining physician's, based on its consistency with other medical evidence. *See Salerno v. Commr. of Soc. Sec.*, 152 Fed. Appx. 208, 209–10 (3d Cir. 2005) (unpublished).

"While the ALJ is, of course, not bound to accept physicians' conclusions, he [or she] may not reject them unless he first weighs them against other relevant evidence and explains why certain evidence has been accepted and why other evidence has been rejected." *Cadillac v. Barnhart*, 84 Fed. App'x. 163, 168 (3d Cir. 2003) (not precedential) (quoting *Kent v. Schweiker,* 710 F.2d 110, 115 n.5 (3d Cir. 1983)) (alteration in original, internal quotations omitted). In choosing to reject a treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may not reject a treating physician's opinion "due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317. I will address each medical opinion in turn.

*Dr. Segal*

Miller began treating with Dr. Segal, a physiatrist, on August 4, 2010 with complaints of cognitive dysfunction and headaches. R. 699. Miller reported an inability to multitask or focus. *Id.* Dr. Segal's assessment was traumatic brain injury and she recommended Topomax and Imitrex to treat Miller's headaches, and referred Miller for cognitive therapy. *Id.* Miller treated with Dr. Segal through December of 2012.

On December 5, 2012, Dr. Segal offered her expert medical opinion. R. 923-938. Dr. Segal opined that Miller experienced a concussion, which is a form of traumatic brain injury. R. 938. Miller experienced cognitive deficits, post-traumatic headaches, post-traumatic vestibular dysfunction, and disturbance of the sleep-wake cycle. *Id.* Dr. Segal noted that Miller made some gains and experienced some resolution of symptoms, but some deficits remained persistent including problems with attention, decreased cognitive endurance, tendency towards cognitive overwhelm, decreased ability to process information, problems with expressive language, and problems with organization. *Id.* Miller's headaches were improved but still present, and she continued to experience sensitivity to light and to busy environments. *Id.*

Dr. Segal concluded that Miller was unable to reach her pre-injury level and to meet the demands of her profession as an attorney. *Id.* Dr. Segal noted that Miller was unable to be employed in any position which would require intact level of attention, cognitive endurance, processing speed, organization and linguistic expression, or that would require her to tolerate a busy, brightly lit environment such as an office. *Id.*

The ALJ afforded Dr. Segal's opinion little weight because "it was given in December 2012 so she does not base her opinion on the complete record in this case." R. 22. The ALJ went on to note that even at the time of Dr. Segal's report, "she noted the improvement that [Miller] had made with treatment[,] with rehabilitation[,] and

8

medication." R. 22. I agree. I find that substantial evidence supports the ALJ's decision to give limited weight to the opinion of Dr. Segal.

Contrary to the plaintiff's argument that the ALJ never addressed Dr. Segal's findings, the ALJ summarized the relevant medical records and Miller's consistent improvement. R. 18-22. For instance, on July 19, 2011, Dr. Segal stated that Miller underwent comprehensive rehabilitation at ReMed and "made significant gains." R. 20; R. 565. Dr. Segal indicated that Miller had headaches and some photophobia, but her vertigo and sleep improved. R. 20; R. 565. A physical examination was within normal limits. R. 20; R. 565. Dr. Segal's assessment included post-traumatic brain injury with post-concussive symptoms, improving with comprehensive neurological rehabilitation treatment. R. 20; R. 565. Likewise, on September 9, 2011, Dr. Segal noted that Miller still had "a bit of photophobia" but her vertigo and sleep were improving. R. 20; R. 633-34. Dr. Segal also reported that Miller's headaches were managed well by Dr. Wallack. R. 20; R. 633-34. On March 29, 2012, Dr. Segal concluded that Miller made "significant gains." R. 20; R. 629. Her headache frequency and severity decreased, and Miller was taking Imitrex only once a week to abort headaches. R. 20; R. 629. Miller's photophobia was "much improved" and she no longer required sunglasses all of the time. R. 20; R. 629.

I find that the ALJ's opinion provides sufficient detail to permit judicial review. The ALJ provided a detailed summary of Dr. Segal's medical records and her expert opinion, and ultimately concluded that this opinion was entitled to only limited weight. The ALJ explained that Dr. Segal's conclusion that Miller was essentially incapable of competitive employment was inconsistent with Dr. Segal's own medical records that tracked consistent improvements in Miller's condition. For instance, Dr. Segal noted

9

that Miller's photophobia was "much improved" and yet concluded that she was incapable of working in a brightly lit environment. I find that the ALJ's decision to give limited weight to Dr. Segal's opinion is supported by substantial evidence.

*Dr. Woods*

Miller sought treatment with Dr. Woods, her primary care physician, on April 2, 2010 with complaints of cognitive difficulties, poor concentration, difficulty multitasking, reduced mental agility, and persistent headaches. R. 705. Dr. Woods' diagnosis was cerebral concussion, "from which [Miller] [was] slowly recovering." *Id.* This is the sole treatment record from Dr. Woods in evidence.

On August 10, 2012, Dr. Woods provided an opinion at the request of Miller's disability insurance carrier regarding whether Miller could return to work as an attorney. R. 970-971. Dr. Woods concluded that Miller was unable to concentrate, focus, or adequately retain information, and "remain[ed] unable to represent her clients effectively in legal battles." R. 971. Dr. Woods stated that Miller "could not do the legal work required and expected by her own standards and the legal community's standards." *Id.*

The ALJ afforded limited weight to Dr. Woods' opinion because Dr. Woods is a primary care physician and not a specialist. R. 22. The ALJ also reasoned that this opinion was given in August of 2012 and was not based on the complete medical record, and that Dr. Woods failed to cite to any evidence to support this finding. *Id.* The ALJ concluded that although Miller was unable to return to her past relevant work as an attorney, she is not functionally limited to the extent that Dr. Woods opined. *Id.*

The plaintiff does not offer any argument regarding the ALJ's decision to give limited weight to Dr. Woods' opinion other than to state that Dr. Woods treated Miller

"for years" and his opinion was, therefore, deserving of greater weight than the consultative examiners. Pl. Br. at 24-25. I disagree. I find that the ALJ's determination to give limited weight to Dr. Woods' opinion is supported by substantial evidence.

An ALJ may not reject a general practitioner's conclusions outright because [he] is not a specialist. *Rachuba v. Astrue*, 2010 WL 1253652, *10 (W.D.Pa. 2010). Rather, "the fact that an opinion is rendered by a primary care physician rather than a specialist in a particular field goes to the weight which should be given that opinion." *Id.* at *10. Here, the ALJ did not reject Dr. Woods' opinion outright because he is a general practitioner. This was one factor that went to the weight afforded to Dr. Woods' opinion. Other factors included that his opinion was not based on the complete medical record, he cited no evidence to support his findings, and because the evidence of record did not support Dr. Woods' finding.

I find that the ALJ's decision to give limited weight to Dr. Woods' opinion is supported by substantial evidence. Miller sought treatment with Dr. Woods only one time over the course of five years, during which time Miller's condition consistently improved. Additionally, the ALJ's RFC, limiting Miller to light work, does not contradict Dr. Woods' opinion. Dr. Woods' opinion was limited to Miller's ability to return to work as an attorney. The ALJ agreed that Miller was incapable of returning to her past relevant work, but concluded that she was capable of performing a limited range of light work. Substantial evidence supports the ALJ's decision to afford limited weight to Dr. Woods' opinion.

*Dr. Wallack*

Miller began treating with Dr. Wallack, a neurologist, on September 3, 2009. R. 410. Dr. Wallack noted that the neurologic examination revealed normal cerebral

function and his impression was a closed head trauma with an episode of mild confusion, with persistent headache and cognitive difficulties; rule out post-concussive syndrome. *Id.*

On December 11, 2012, Dr. Wallack reported on Miller's condition, noting that as of October 5, 2010 (the date of Miller's last visit) she was stable, but could not perform her usual responsibilities cognitively. R. 964. Miller continued making slight progress. *Id.* Dr. Wallack noted that Miller experienced chronic daily headaches, but no nausea, vomiting or photophobia. *Id.* Miller had an occasional migraine-like episode, which she treated with Imitrex with good response. *Id.* Dr. Wallack concluded that Miller's symptoms are secondary to chronic posttraumatic encephalopathy because of her fall in August of 2009. *Id.* Miller had no focal neurologic deficits, but was unable to return to work as an attorney. *Id.*

The plaintiff, again, fails to provide any argument concerning the ALJ's treatment of Dr. Wallack's opinion other than to state that Dr. Wallack treated Miller "for years." Pl. Br. at 24-25. Perhaps this is because the ALJ's RFC assessment is consistent with Dr. Wallack's findings. As noted by the ALJ, Dr. Wallack consistently concluded that Miller was neurologically stable (R. 410; 415; 420; 432; 418; 462; 627; 502; 498). On June 27, 2011, Dr. Wallack noted that Miller "had significant improvement in her cognitive abilities." R. 627. Likewise, on November 21, 2011, Dr. Wallack concluded that Miller appeared stable and was making progress. R. 502. On December 11, 2012, Dr. Wallack opined that Miller had no neurologic deficits, but could not return to work as an attorney. R. 964. The ALJ agreed that Miller could not return to her past relevant work as an attorney, and concluded that Miller was capable of light work with additional

limitations. I find that the ALJ's RFC assessment is consistent with Dr. Wallack's findings, and the RFC is supported by substantial evidence.

*Non-Treating Physicians, Drs. King and Maitz*

The plaintiff also criticizes the ALJ's affording "full weight" to Dr. King and Dr. Maitz. Pl. Br. at 21-25. As the Commissioner points out, this argument misses the mark. The ALJ did not afford these opinions full weight. Rather, the ALJ conducted an extensive RFC analysis that included a summary of each of Miller's medical providers, the consultative examiners, and Miller's subjective complaints, to conclude that Miller was capable of light work with additional limitations. I find that the ALJ's RFC assessment is supported by substantial evidence.

An ALJ must provide sufficient detail in his opinion to permit judicial review. *See Burnett*, 220 F.3d at 120. When dealing with conflicting medical evidence, the ALJ must describe the evidence and explain his resolution of the conflict. As the Court of Appeals observed in *Plummer,* 186 F.3d at 429:

> When a conflict in the evidence exists, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Mason v. Shalala,* 994 F.2d 1058, 1066 (3d Cir. 1993). The ALJ must consider all the evidence and give some reason for discounting the evidence [he] rejects. *See Stewart v. Secretary of H.E.W.,* 714 F.2d 287, 290 (3d Cir.1983).

While it is error for an ALJ to fail "to consider and explain his reasons for discounting all of the pertinent evidence before him in making his residual functional capacity determination . . .", *Burnett*, 220 F.3d at 121, an ALJ's decision is to be "read as a whole" when applying *Burnett. See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *Caruso v. Commr. of Soc. Sec.*, 99 Fed. Appx. 376, 379–80 (3d Cir. 2004) (unpublished) (examination of the opinion as a whole permitted "the meaningful review required by *Burnett*," and a finding that the "ALJ's conclusions [were] . . . supported by substantial

13

evidence.") The issue is whether, by reading the ALJ's opinion as whole against the record, the reviewing court can understand why the ALJ came to his decision, and identify substantial evidence in the record supporting the decision. *Id.* at 379.

In *Jones*, the ALJ discussed the pertinent medical evidence in some detail, and noted the conservative treatment and lack of "frequent hospitalization or emergency treatments" as a basis for the non-disability decision. 364 F.3d at 505. "This discussion satisfie[d] *Burnett'*s requirement that there be sufficient explanation to provide meaningful review of the step three determination." *Id.*

Here, contrary to plaintiff's assertion that the ALJ improperly afforded the consultative examiners "full weight," the ALJ did not blindly adopt the opinions of Drs. King and Maitz. The ALJ thoroughly reviewed all of the medical evidence, including the opinions of Dr. King and Dr. Maitz, and explained his reasons for discounting certain evidence while affording greater weight to other evidence.

With respect to Dr. King's neuropsychological examination (R. 534-541), the ALJ noted Dr. King's finding that although plaintiff was diagnosed with a concussion, the records did not indicate more than a "minor head injury." R. 19; R. 540. Dr. King performed a number of tests and concluded that Miller's results argued against the presence of any underlying brain dysfunction. R. 20; R. 540. Dr. King opined that Miller's neuropsychological functioning was the same as it was prior to the accident and that she had no compromise in her occupational skills or vocational potential. R. 20; R. 541.

The ALJ also summarized Dr. Maitz's findings from his neuropsychological examination. R. 20; R. 507-530. Dr. Maitz concluded that if Miller sustained a concussion from the accident, it was relatively mild in nature, noting that diagnostic

14

tests revealed no abnormalities. R. 20, R. 526. Dr. Maitz's diagnosis was somatization disorder. R. 20; R. 527.

The ALJ did not, as plaintiff argues, afford "full weight" to Dr. King and Dr. Maitz. Rather, the ALJ found that Miller was more limited than these consultative examiners opined. Dr. King concluded that Miller could return to work without restrictions. The ALJ did not adopt this finding, and concluded that Miller was not capable of returning to her past relevant work as an attorney. Likewise, Dr. Maitz concluded that Miller was suffering from a somatic disorder and that her post-concussion syndrome was resolved. Again, the ALJ did not adopt this finding and instead concluded that Miller's severe impairments were post-concussion syndrome and headaches with migraines.

Review of the ALJ's careful canvass of the medical records, R. 18-22, and the medical records themselves, convinces me that the ALJ's decision fits comfortably within *Jones'* requirements. In *Jones* the ALJ's opinion, "read as a whole," discussed the medical evidence that pointed to the particular ailment, and mentioned the lack of complications, and the absence of "frequent hospitalization or emergency treatments" as features that mitigated the severity of the diagnosis. *Jones,* 364 F.3d at 505. This served to differentiate the ALJ's opinion from the "bare conclusory statement" rejected in *Burnett. Id.* at 504. In this case the ALJ's opinion carefully reviewed and discussed the medical evidence of Miller's ailment (R. 18-22), and noted the conservative treatment history (R. 21) and the "normal" diagnostic evidence (*id.*) as significant indicators that plaintiff's physical ailments were not as disabling as she claimed. R. 18-22. The ALJ also noted that despite alleging a debilitated lifestyle, the evidence demonstrated that claimant is socially active, travels, and takes care of personal needs without assistance.

As discussed below in section B, the ALJ concluded that this evidence undercut the credibility of Plaintiff's claims of restrictions on her activities of daily living. R. 27. These assessments were based on substantial evidence. Under *Jones,* the ALJ's opinion is capable of meaningful review, and is based on substantial evidence.

### B. The ALJ's credibility determination.

Miller argues that the ALJ erred in determining that she was not entirely credible in light of her work history. Pl. Br. at 25-26. In explaining how an ALJ must support his credibility findings, the Court of Appeals has noted the following:

> When making credibility findings, the ALJ must indicate which evidence he rejects and which he relies upon as the basis for his findings. *See Schaudeck v. Commissioner of Social Sec. Admin.,* 181 F.3d 429, 433 (3d Cir. 1999). Inconsistencies in a claimant's testimony or daily activities permit an ALJ to conclude that some or all of the claimant's testimony about her limitations or symptoms is less than fully credible. *See Burns v. Barnhart,* 312 F.3d 113, 129–30 (3d Cir.2002). Moreover, allegations of pain and other subjective symptoms must be supported by objective medical evidence. *See* 20 C.F.R. § 404.1529; *see also Hartranft v. Apfel,* 181 F.3d 358, 362 (3d Cir.1999). Even "[l]imitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible—the ALJ can choose to credit portions of the existing evidence." *See Rutherford,* 399 F.3d at 554.

*Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 146 (3d Cir. 2007) (not precedential). The Court of Appeals has acknowledged that an ALJ's credibility assessment "is entitled to our substantial deference." *Szallar v. Comm'r of Soc. Sec.,* 631 Fed. App. 107, 110 (3d Cir. 2015) (citing to *Zirnsak v. Colvin,* 777 F.3d 607, 613 (3d Cir. 2014)).

Following the ALJ's detailed summary of the medical records, he concluded that Miller's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this opinion." R. 21. The ALJ spent a great deal of time explaining

in detail that Miller's subjective complaints were not entirely credible, both because these subjective complaints were not supported by the conservative medical treatment that demonstrated consistent improvements, and because of internal inconsistencies that demonstrated that Miller was not as debilitated as she alleged. Specifically, the ALJ reasoned:

> The claimant has not required inpatient hospitalization for her impairments. Her treatment has been conservative in nature. She has done well with outpatient rehabilitative services. Dr. Wallack, a treating neurologist, generally found her condition to be stable with no neurological deficits. Dr. Coslett more recently also found that she had no major problems. Dr. Maltz [sic], in his neuropsychological evaluation found that the claimant has no impairment due to injury or trauma to the brain. Dr. King, in his neuropsychological evaluation, found that the claimant had no neuropsychological impairment related to a head injury, with her neuropsychological functioning at the time of his examination the same as it was prior to her accident. Objective diagnostic testing (i.e. MRI, CT scan, EEG) has been normal. She has had no significant functional deficits due to her headaches. She has no motor or sensory deficits. She has a normal gait and has had no loss of balance. Her headaches have improved with medication. The medical record indicates that her sensitivity to light has much improved. Despite alleging a debilitated lifestyle, the claimant is able to take care of her personal needs without assistance, cook, drive, use public transportation unaccompanied, shop for groceries, garden, attend church, and take care of her dog regularly. She uses a computer on a regular basis. She is able to watch and follow television programs. She socializes with family members and friends. She goes on out-of-town pleasure trips. She was able to take a continuing education course.

R. 22. I find that substantial evidence supports the ALJ's credibility determination.

Plaintiff argues that "[s]ubjective complaints from a claimant who has a long work record are entitled to substantial credibility." Pl. Br. at 25 (citing *Weber v. Massanni*, 156 F.Supp.2d 475 (E.D.Pa. 2001) also citing (*Traybron v. Harris*, 667 F.2d 412 (3d Cir. 1981)). The Commissioner argues that "the ALJ must assess credibility based on the record overall" and that work history is just one of many factors an ALJ must consider. Com. Br. at 14 (citing *Corley v. Barnhart*, 102 F.App'x 752, 755 (3d Cir. 2004) also citing *Polardino v. Colvin*, No. 12-806, 2013 WL 4498981 (W.D.Pa. Aug.10,

17

2013)). I agree with the Commissioner. Work history is just one factor to be considered in assessing the claimant's credibility. *Salazar v. Colvin*, No. 12-6170, 2014 WL 6633217, at *7 (E.D.Pa. Nov. 24 2014) ("The fact alone that a claimant has a long work history does not require a remand, particularly when medical evidence does not support a claimant's testimony of the extent of her limitations."). I am bound to give substantial deference to the ALJ's credibility determination. *Szallar,* 631 Fed. App. at 110. I find that the ALJ's credibility determination was supported by substantial evidence, and was capable of meaningful review.

### C. Substantial Evidence Supports the ALJ's Evaluation of Miller's Headaches.

Miller argues that the ALJ failed to account for the limitations caused by her headaches in the RFC. Pl. Br. at 27-30. The Commissioner argues that the ALJ concluded that Miller's headaches were a severe impairment but that the claimant had no functional deficits from her headaches. Com. Br. at 15-18. Recognizing that Miller's headaches had improved but not disappeared, the Commissioner argues that the ALJ accounted for migraine "triggers" in the RFC by limiting Miller to work performed primarily on her own, not as part of a team, in a quiet environment. *Id.* I agree.

As discussed above, the ALJ conducted an extensive RFC assessment that included a summary of Miller's medical treatment relating to her headaches and migraines, which documented gradual but steady improvements. Miller presented to Lankenau Hospital on August 31, 2009 (six days after the accident) with complaints of headache, blurred vision, and nausea. R. 18; R. 228. On September 3, 2009, Miller presented to Dr. Wallack with complaints of persistent headaches. R. 18; R. 410. On August 19, 2010 and again on December 2, 2010, Miller presented to ReMed with

complaints of headaches and sensitivity to noise and light. R. 19; R. 243; R. 255. Miller wore dark sunglasses to control for photosensitivity. R. 19; R. 243.

In 2011, Miller began experiencing improvements in terms of frequency and severity of her headaches, and decreased photosensitivity. Miller presented to Dr. Segal on July 19, 2011 with complaints of headaches and some photophobia. R. 20; R. 565. On September 9, 2011, Dr. Segal noted that Miller "still had a bit of photophobia, but that it was getting better." R. 20; R. 633. Dr. Segal also reported that Miller's post-concussion headaches were "being managed well by Dr. Wallack." R. 20; R. 634. On November 21, 2011, Dr. Wallack stated that Miller did not have recurrent headaches while taking her medication. R. 19; R. 502. On March 29, 2012, Dr. Segal noted that Miller was taking Imitrex once per week to abort headaches. R. 20; R. 629. Miller's "photophobia had been much improved and she no longer needed to wear sunglasses at all times." R. 20; R. 629. Likewise, Dr. Maitz reported that Miller had photosensitivity that had diminished over time. R. 20; R. 517. On December 11, 2012, Miller presented to Dr. Wallack with complaints of daily headaches but no nausea, vomiting or photophobia. R. 21; R. 964. Miller reported a "migraine-like episode" once per week, which she treated with Imitrex with good response. R. 21; R. 964. Dr. Coslett, a neurologist at the VA Hospital[6], also opined that Miller responded "adequately but not perfectly to Imitrex." R. 21; R. 1019.

---

[6] Miller also cites to Dr. Coslett's March 8, 2014 records (the day after the ALJ's decision) which stated that Miller still experienced post-traumatic stress migraines. Miller does not argue that this post-decision evidence warrants remand under 42 U.S.C. § 405(g), which requires a showing that the evidence is (1) new; (2) material; and (3) good cause exists for not presenting the evidence to the ALJ. Therefore, I need not reach whether remand is warranted on this ground. However, even if plaintiff made this argument, as the Commissioner points out, the ALJ properly accounted for Miller's migraines in the RFC. Therefore, this new evidence is not material and would not change the outcome of the decision.

In light of Miller's improvement over the course of treatment, the ALJ concluded as follows:

> [Miller] has had no significant functional deficits due to her headaches. She has no motor or sensory deficits. She has a normal gait and no loss of balance. Her headaches have improved with medication. The medical record indicates that her sensitivity to light has much improved.

R. 21. The ALJ gave some weight to Miller's subjective complaints regarding difficulty with noise and distractibility, and limited Miller to "work performed primarily on her own, not as part of a team, in a quiet environment." R. 22. I find that the ALJ adequately accounted for Miller's migraines in the RFC when he minimized Miller's exposure to migraine "triggers." Miller argues that remand is warranted because the ALJ the failed to account for her photosensitivity. However, the ALJ considered Miller's photosensitivity and concluded that based on the medical records, her photosensitivity was "much improved." I find that substantial evidence supports the ALJ's RFC assessment, which includes a limitation for Miller's migraines and her sensitivity to noise.

Therefore, I find that remand is not warranted and Miller's request for review is denied.

BY THE COURT:

_s/Richard A. Lloret_
HON. RICHARD A. LLORET
U.S. Magistrate Judge

DATE: August 22, 2017